# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **MARK GORDEN McMURPHY,** | § | |
| **TDCJ No. 01994765,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **Civil No. SA-18-CA-00120-ESC** |
| | § | |
| **LORIE DAVIS, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are *pro se* Petitioner Mark Gorden McMurphy's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1), Respondent's Answer (ECF No. 12), and Petitioner's Reply thereto (ECF No. 14). The parties have consented to the case proceeding before a United States Magistrate Judge in accordance with 28 U.S.C. § 636 (ECF Nos. 5, 7). Having reviewed the record and pleadings submitted by both parties, the undersigned concludes Petitioner is not entitled to federal habeas corpus relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d). Petitioner is also denied a certificate of appealability.

## I. Background

The facts of Petitioner's offense were accurately summarized by the Third Court of Appeals on direct appeal:

> The jury heard evidence that, on the night of October 3, 2013, Matthew Porter, a clerk at a convenience store located in Garden Ridge, observed a Chevy Impala pull into the gas-pump area of the store property and "stop abruptly." Porter testified that the driver of the vehicle, later identified as [Petitioner], got out of the car and "began yelling different obscenities and incoherent thoughts."

Porter also testified that no one else was inside the vehicle at the time. Porter recounted that he walked up to [Petitioner], began speaking with him, and offered him a cigarette. During the course of speaking with him, Porter testified, he came to believe that [Petitioner] was "drunk" . . . Porter then returned to the store and told the other clerk to call the Garden Ridge Police Department. The other clerk did so, and the police arrived shortly thereafter.

Officer Bryan Pelata responded to the call and testified that when he arrived at the store, he made contact with [Petitioner] and "asked [him] if he was okay." According to Pelata, [Petitioner] told him that "he was fine." However, Pelata noticed that [Petitioner]'s eyes were "bloodshot and glossy" and that he had "slurred speech" and a "strong" odor of alcohol on him. Pelata also observed a half-full, 32-ounce bottle of malt liquor in the passenger seat of the vehicle. Pelata proceeded to ask [Petitioner] if he had been driving. According to Pelata, [Petitioner] told him that "his girlfriend" had been driving the car. When Pelata asked [Petitioner] who his girlfriend was, [Petitioner] identified her as "Nancy" but told Pelata that "he did not know her last name." Pelata also testified that when he asked [Petitioner] where his girlfriend was, [Petitioner] told him that "as soon as [Nancy] saw [Pelata] pull up, she took off." However, Pelata had not observed anyone leaving the store when he arrived. Suspecting [Petitioner] to be intoxicated, Pelata proceeded to administer the standardized field sobriety tests, all of which, Pelata testified, [Petitioner] failed. Pelata then placed [Petitioner] under arrest for driving while intoxicated.

Pelata further testified that he subsequently asked [Petitioner] for a sample of his blood. After [Petitioner] refused, Pelata explained, he obtained a warrant for his blood and transported him to a hospital, where [Petitioner]'s blood was drawn. The results of the blood draw were admitted into evidence. According to the evidence presented, [Petitioner]'s blood-alcohol content at the time of the draw was .168, over twice the legal limit . . .

*McMurphy v. State*, No. 03-15-00246-CR, 2016 WL 690995, at *1 (Tex. App.—Austin, Feb. 19, 2016, pet. ref'd): ECF No. 13-15 at 1-3.

Petitioner was charged by indictment with driving while intoxicated with two or more previous convictions for the same type of offense. ECF No. 13-3 at 6-8 (Indictment). The indictment also alleged seven prior convictions for enhancement purposes, but only four of these convictions were ultimately presented to the jury: possession of a controlled substance, possession of stolen property, unlawful sexual intercourse, and solicitation of a minor to use or

sell a controlled substance. ECF No. 13-21 at 128-130. On January 14, 2015, a jury returned a guilty verdict after deliberating for approximately two and a half hours. ECF No. 13-21 at 142 (Judgment), 151-52 (Docket Sheet). After a separate punishment proceeding, the jury found the four enhancement allegations were true and assessed punishment at sixty years of imprisonment. ECF No. 13-21 at 137-139 (Punishment Verdict).

Petitioner appealed his conviction and sentence, arguing (1) the evidence was legally and factual insufficient to support a verdict, and (2) the trial court erred in denying the defense's motion to suppress evidence of the blood alcohol test. ECF No. 13-13. The Third Court of Appeals rejected Petitioner's arguments and affirmed his conviction and sentence in an unpublished opinion dated February 19, 2016. *McMurphy*, 2016 WL 690995; ECF No. 13-15. The Texas Court of Criminal Appeals then refused his petition for discretionary review. *McMurphy v. State*, No. 0333-16 (Tex. Crim. App. July 27, 2016). Petitioner filed a state application for habeas corpus relief on May 8, 2017, raising several ineffective-assistance-of-trial-counsel (IATC) claims, a due process claim concerning the admissibility of his blood sample, and a claim asserting his right to an impartial jury was violated. *Ex parte McMurphy*, No. 87,010-01 (Tex. Crim. App.); ECF No. 13-21 at 11-48. Based on findings made by the trial court, the Texas Court of Criminal Appeals denied Petitioner's state application without written order on January 24, 2018. ECF No. 13-20.

Petitioner placed the instant federal habeas petition in the prison mail system on January 31, 2018. ECF No. 1 at 10. The petition raises several IATC claims alleging that counsel failed to: (1) request a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978); (2) obtain an expert on standard field sobriety tests; (3) investigate his case prior to trial; (4) provide

adequate assistance at the suppression hearing; (5) request a mistrial when it became clear that perjured testimony was being used; (6) properly question prospective jurors during voir dire; (7) obtain an expert to rebut the State's assertions concerning his blood sample's chain of custody; (8) object on the bases of *Franks*; (9) adequately represent him throughout voir dire, pre-trial, the suppression hearing, or during trial; and (10) object to the use of perjured testimony. The petition also alleges that his right to a trial by an impartial jury was violated and that he was denied due process by the admission of his blood samples without the State properly establishing the chain of custody. In her answer, Respondent avers the petition is timely and not successive, and that each of the claims raised by Petitioner has been exhausted in state court. ECF No. 12 at 5-6.

## II. <u>Standard of Review</u>

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA. 28 U.S.C.A. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself. *Richter*, 562 U.S. at 102. Instead, a petitioner must show that the decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). So long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

### III. <u>Analysis</u>

A.    <u>The IATC Claims</u>

Petitioner raises several IATC claims in his federal petition, each one having been raised and rejected during Petitioner's state habeas proceedings. As discussed below, Petitioner fails to demonstrate the state court's rejection of the claims was contrary to, or an unreasonable application of, Supreme Court precedent. Federal habeas relief is therefore denied.

1.     The *Strickland* standard

Sixth Amendment claims concerning the alleged ineffective assistance of trial counsel are reviewed under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced his defense.  466 U.S. at 687-88, 690.  According to the Supreme Court, "[s]urmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct, and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards.  *Strickland,* 466 U.S. at 687-89.  Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Burt v. Titlow*, 571 U.S. 12, 22 (2013) (quoting *Strickland*, 466 U.S. at 690).  To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  Under this prong, the "likelihood of a different result must be substantial, not just conceivable."  *Richter*, 562 U.S. at 112.  A habeas petitioner has the burden of proving both prongs of the *Strickland* test.  *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Finally, IATC claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1).  *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010).  Where, as here, the state court adjudicated the IATC claims

on the merits, a court must review a petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citing *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)); *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009) (same). In such cases, the "pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standards," but whether "the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S at 101. That is to say, the question to be asked in this case is not whether counsel's actions were reasonable, but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. at 105.

> ### 2. Counsel's failure to request a *Franks* hearing (Claims 1, 10).

Petitioner first alleges counsel was ineffective for failing to request a *Franks* hearing to challenge the search warrant affidavit. According to Petitioner, Officer Pelata presented "perjured" testimony because the search warrant affidavit stated that the officer spoke to Mr. Porter and another witness before he arrested Petitioner, but this statement was later contradicted by the officer's testimony at trial. Petitioner also contends Officer Pelata presented "perjured" testimony by swearing in the affidavit that he "qualified" Petitioner for the field sobriety test when he later admitted during his trial testimony that he did not qualify Petitioner prior to performing the test. Petitioner claims counsel should have requested a *Franks* hearing to contest the validity of the search warrant affidavit based on these discrepancies.

Under *Franks*, an affidavit used to support a search warrant is presumed valid. 438 U.S. at 171. However, an affidavit's veracity may be attacked by showing deliberate falsehood or reckless disregard for the truth by the affiant. *Id.* To meet this burden, the challenger must make a substantial showing that: (1) the affiant's allegations were deliberate falsehoods or made with a

reckless disregard for the truth and (2) after the false statements are removed, the affidavit is not sufficient to support a finding of probable cause. *Moreno v. Dretke*, 450 F.3d 158, 169 (5th Cir. 2006). Additionally, to warrant a *Franks* hearing, the allegations of falsehood or reckless disregard must be accompanied by an offer of proof which identifies "specifically the portion of the warrant affidavit that is claimed to be false; and [] should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient." *Franks*, 438 U.S. at 171.

Petitioner raised these allegations during his state habeas proceedings. In response to these allegations, trial counsel submitted an affidavit declaring:

> In regard to [Petitioner]'s claims that I failed to request a *Frank*'s Motion on the blood search warrant, the evidence at trial did not support a good faith argument to pursue that strategy.
>
> [Petitioner]'s accusations fail to acknowledge that the basis of the Officer's false testimony was only the timing of the information received, not the information itself. While the timing of the information may have kept a Court from finding the Officer had probable cause to make an arrest for Driving While Intoxicated, it became irrelevant once the Court sustained probable cause to arrest based off public intoxication. After the Court found probable cause to arrest for public intoxication, the Officer was then free to rely on any additional information he learned after the arrest and include that in the blood warrant affidavit to satisfy probable cause for purposes of the search warrant.
>
> There may have been other considerations on why I felt that a *Frank*'s Motion and objecting to the blood search warrant was not strategically effective as well, but the main one I recall at the time was that it would not have worked due to the limited nature of the Officer's false statement and the Court overruling my objections based [on] "lack of probable cause to arrest."

ECF No. 13-21 at 113-14.

The state habeas trial court found that trial counsel was competent, and her affidavit was credible. ECF No. 13-21 at 117. The court further found:

> 3.    There was not any "falsehood" in the affidavit for [Petitioner]'s blood warrant. Even if anything in the warrant was not technically chronological or otherwise incorrect, it was not an intentional, knowing, or reckless falsehood; [f]urthermore, it was not material to the finding of probable cause. The affidavit was sufficient even if the "incorrect" statements were excised.

*Id.* The court then concluded that Petitioner's counsel was not ineffective for failing to seek a *Franks* hearing. *Id*. at 118. These findings and conclusions were adopted by the Texas Court of Criminal Appeals when it denied Petitioner's state habeas application. ECF No. 13-20.

"[C]ounsel has wide latitude in deciding how best to represent a client. . . ." *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003). When deciding whether counsel's performance was deficient, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 688-89. Counsel's strategic choices, made after a thorough investigation of the law and facts relevant to plausible options, are virtually unchallengeable. *Strickland*, 466 U.S. at 673; *Pape v. Thaler*, 645 F.3d 281, 289-90 (5th Cir. 2011). Furthermore, counsel's performance cannot be considered deficient or prejudicial if counsel fails to raise a non-meritorious argument. *Turner v. Quarterman*, 481 F.3d 292, 298 (5th Cir. 2007); *Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006).

Counsel made an informed and strategic decision to not seek a *Franks* hearing. The record indicates this decision was not unreasonable and, therefore, counsel's performance was not deficient. Furthermore, the record supports the habeas trial court's conclusion that the

challenged statements in the affidavit were not "deliberate falsehoods or made with a reckless disregard for the truth," nor were they critical to the finding of sufficient probable cause to support the search warrant.[1]  As a result, a *Franks* challenge was not likely to succeed, and Petitioner was not prejudiced by counsel's alleged failure.  Because counsel's failure to seek a *Franks* hearing was neither deficient performance nor prejudicial, the state court's denial of relief on this claim was not an unreasonable application of *Strickland*.

### 3.  Presentation of expert witnesses (Claims 2, 9).

Petitioner next contends counsel should have retained expert witnesses to support his argument that the field sobriety test was improperly administered and to challenge the chain of custody of the blood sample used to establish his blood alcohol content.  Similar to the previous allegations, trial counsel explained her reason for not retaining an expert in her state habeas affidavit:

> In regard to not calling an expert on [Petitioner]'s behalf, it would not have been useful.  The jury heard evidence that the Officer was inexperienced and improperly administered the Standardized Field Sobriety Tests.  The jury also was informed of the mishandling of the blood.  I was not about to call an expert to have the blood retested and confirmed to have a high BAC and DNA tested to show it was [Petitioner]'s.  The better strategy was to have the jury question it without exposing the Defense Expert to questions on why these simple additional tests were not performed by the Defense Expert.  The burden was on the State and to call a Defense Expert would have potentially shifted the jury [] to expecting the Defense to prove it wasn't [Petitioner]'s blood.

ECF No. 13-21 at 115.

The state habeas court found counsel's statement credible and the Texas Court of Criminal Appeals denied relief on the findings of the trial court. ECF No. 13-21 at 117-18; ECF

---

[1]     The affidavit is in the record at ECF No. 13-21 at 100. The motion to suppress hearing is at ECF No. 13-5 at 232-67 and ECF No. 13-6 at 7-58.

No. 13-20. The state habeas court's factual determinations, including credibility findings and any finding that counsel's choices were strategic, are entitled to a presumption of correctness unless they lack fair support in the record. *Demosthenes v. Baal*, 495 U.S. 731, 735 (1990); *Miller v. Thaler*, 714 F.3d 897, 903 (5th Cir. 2013). The presumption afforded factual findings is even stronger when, as in this matter, the state habeas judge making the findings is also the convicting court. *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000).

Furthermore, a petitioner's unsupported claims regarding an uncalled expert witness "are speculative and disfavored by this Court as grounds for demonstrating ineffective assistance of counsel." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002). To prevail on an IATC claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate the witness was available to testify, delineate the content of the witness's proposed testimony, and show the testimony would have been favorable to the defense. *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009); *Del Toro v. Quarterman*, 498 F.3d 486, 490-91 (5th Cir. 2007) (finding counsel's choice to not hire an expert reasonable under the circumstances).

Counsel made a reasonable strategic decision to challenge the administration of the field sobriety tests and the chain of custody of the blood sample by cross-examination of the State's witnesses rather than through a defense expert. The record indicates counsel's strategy was not unreasonable, and that counsel was able to challenge this evidence through voir dire and cross-examination of the State's witnesses. ECF No. 13-6 at 193-98, 210-12, 240-41, 243-44; ECF No. 13-7 at 18-19. Petitioner also has not made the requisite showing that an expert witness was available to testify and that the testimony would have been favorable to the defense. Because Petitioner has not shown counsel's performance was deficient or prejudicial, the state court's

denial of this claim was not an unreasonable application of *Strickland*. *See, e.g., Evans*, 285 F.3d at 377-78 (rejecting uncalled expert witness claim where petitioner failed to present evidence of what a scientific expert would have stated).

### 4. Counsel's investigation (Claim 3).

In his third claim, Petitioner alleges his attorney failed to conduct an adequate pre-trial investigation by failing to interview witnesses. He also argues counsel's advocacy would have been greatly improved had counsel viewed the available videos and made a timeline of the different events prior to trial. Trial counsel responded to this claim in her affidavit to the state habeas trial court, stating:

> In regard to accusations that I had not prepared in advance of trial, that is not true. I had watched the videos on numerous occasions, gone over the police reports and met with [Petitioner] on multiple occasions at the jail. I was prepared to question the Officer on the timeline discrepancies and other issues prior to the trial. The fact that I was able to show the jury the Officer's lack of experience and false statements was part of my strategy in hoping that they would disregard the other evidence and acquit [Petitioner]. After speaking with the jury, it was clear that they did not agree with the Officer's conduct, however, they felt there was substantial corroboration to show [Petitioner] was operating the motor vehicle and was intoxicated while operating the motor vehicle. While I disagree with their opinion, that was nevertheless in the province of the jury to decide.
>
>                            \*\*\*
>
> Also, [Petitioner] was not able to provide me any names or contact information to verify that person's identity whom he claimed to have fled the scene. So, I was limited on my ability to corroborate that portion of his story. He also failed to provide me any witness names for punishment despite me asking him on numerous occasions. He said the only person he could think of was his mother and she was too old and [he] didn't want to involve her so I was forced to focus on other aspects of the case at sentencing rather than humanizing [Petitioner] personally.

ECF No. 13-21 at 114-15.

The state habeas trial court found counsel's statements credible and concluded counsel's performance was not deficient, and the Texas Court of Criminal Appeals denied relief on this claim on the findings of the trial court. ECF No. 13-21 at 117-18; ECF No. 13-20.

*Strickland* requires counsel to undertake a reasonable investigation. 466 U.S. at 690-91; *Charles v. Stephens*, 736 F.3d 380, 389 (5th Cir. 2013). Counsel must, at minimum, interview potential witnesses and make an independent investigation of the facts and circumstances of the case. *Kately v. Cain*, 704 F.3d 356, 361 (5th Cir. 2013). In assessing the reasonableness of counsel's investigation, a heavy measure of deference is applied to counsel's judgments, and is weighed in light of the defendant's own statements and actions. *Strickland*, 466 U.S. at 691. Furthermore, a petitioner cannot "simply allege but must affirmatively prove prejudice" under *Strickland* when complaining of counsel's failure to investigate. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992).

The state habeas court's factual determinations, including credibility findings, are entitled to a presumption of correctness. *Richards v. Quarterman*, 566 F.3d 553, 563-64 (5th Cir. 2009). In this case, the state habeas court's implied factual finding that counsel's investigation was adequate has not been rebutted with clear and convincing evidence. Indeed, a thorough review of the trial transcript indicates counsel was well-versed in both the facts and law related to Petitioner's defense, and that counsel was familiar with the contents of the videos and other evidence presented at trial. Further, Petitioner has not alleged with specificity what any further investigation would have revealed or how it would have altered the outcome of the trial. *Druery v. Thaler*, 647 F.3d 535, 541 (5th Cir. 2011). Petitioner also has not pointed to exculpatory evidence that trial counsel could have uncovered with additional investigation, or proven that an

undiscovered witness would have testified in his favor.  *Gregory v. Thaler*, 601 F.3d 347, 353 (5th Cir. 2010); *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).  As a result, Petitioner has not shown counsel's performance was deficient or that he was prejudiced by the asserted error.  The state court's denial of this claim, therefore, was not an unreasonable application of *Strickland*.

### 5.      The suppression hearing (Claim 4).

Prior to trial, the trial court conducted a hearing on the defense's motion to suppress evidence, including the standardized field sobriety tests and other evidence supporting probable cause for Petitioner's arrest.  ECF No. 13-5 at 233-67; ECF No. 13-6 at 7-58.  Petitioner asserts his counsel was ineffective at this suppression hearing, and maintains counsel used the hearing as a "fishing trip" because her investigation of his case was incomplete.  Trial counsel explained her strategy in her affidavit to the state habeas court:

> In regard to the court's comments of me being on a fishing expedition and not questioning the Officer prior to the trial, neither of these are abnormal practices in a criminal case.  Police officers will rarely speak to defense counsel prior to trial.  When provided the opportunity to question an officer outside the presence of the jury, it is a common defense counsel practice to go on a fishing expedition to find out all the information one possibly can to avoid being surprised by the officer's answers in front of the jury.  That in my opinion is part of a zealous representation, not a sign of ineffective assistance of counsel.

ECF No. 13-21 at 114-15.  The state habeas court found counsel's statement credible and concluded counsel was not ineffective, and the Court of Criminal Appeals denied relief based on the findings of the trial court.  ECF No. 13-21 at 117-18; ECF No. 13-20.

A state court's determination that counsel's conduct was the result of a fully informed strategic or tactical decision is a factual determination, while the reasonableness of a particular strategic decision is a question of law which is evaluated under a *de novo* standard of review.

*Virgil v. Dretke*, 446 F.3d 598, 604-05 (5th Cir. 2006). The record of the suppression hearing indicates counsel was familiar with all the evidence provided during discovery and that counsel had a sound trial strategy with regard to challenging Officer Pelata's testimony and the other evidence presented by the State. The state court could reasonably conclude counsel's performance at the suppression hearing was the product of a reasoned strategy and, given the latitude afforded counsel's strategic choices, the state court's denial of this claim was not an unreasonable application of *Strickland* because the strategy cannot be said to be "so ill chosen that it permeat[ed] the trial with obvious unfairness." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997) (internal quotations omitted); *Bower v. Quarterman*, 497 F.3d 459, 473 (5th Cir. 2007).

### 6. Counsel's failure to request a mistrial (Claim 5).

Petitioner contends counsel should have requested a mistrial when it became clear Officer Pelata and Mr. Porter offered "false and perjured testimony." But to prevail on such a claim, Petitioner must show a reasonable probability a motion for a mistrial would have been granted. *Henderson v. Cockrell*, 333 F.3d 592, 601 (5th Cir. 2010). Texas state law provides a mistrial is an appropriate remedy only in rare cases for a narrow class of highly prejudicial and incurable errors. *Ocon v. State*, 284 S.W. 3d 880, 884 (Tex. Crim. App. 2009) (finding the trial court did not abuse its discretion in denying a mistrial for potential juror misconduct). A mistrial may be granted only when less drastic alternatives are not available, such as instructing the jury regarding the nature and weight accorded evidence. *Id.*

Petitioner asserts counsel was ineffective for failing to request a mistrial because of the allegedly perjured testimony of Officer Pelata. Although counsel did not request a mistrial, at

the close of the prosecution's case counsel sought a directed verdict based on Officer Pelata's testimony:

> At this time the defense requests a directed verdict based on the fact that the officer lied under oath, not just once, but twice; once in a sworn affidavit for the blood warrant, then again to this Court after having been asked multiple times to correct his statement and him refusing to do so. And after confirming he had looked at the video prior to testifying, he still continued in his lie. But for the State calling him back as a witness and [me] cross-examining him again in front of the jury, and only at that point did he concede that he had lied. And he didn't lie just about that. He also lied about several other things that we have proven, specifically, that he didn't ask certain questions even though he swore in affidavits that he had.
>
> We believe that he tampered with evidence in a criminal investigation because he personally turned off mics [in] an ongoing criminal investigation. There is all the reason in the world to doubt his testimony and credibility. And for that reason, we believe that the State can't possibly prove beyond a reasonable doubt their case.

ECF No. 13-7 at 56. The trial court denied the motion, stating:

> Now, I do think he had inconsistent testimony, but I think he is just a rookie and not very smart. That would be my ruling. The jury is the judge of his credibility, so you can make that argument to them. If they believe you, then they will do the right thing.

*Id*. at 57.

Petitioner has not met his burden of showing counsel's performance in failing to move for a mistrial was below prevailing professional norms, or that a motion for a mistrial would have been granted. The state habeas trial court was the same as the convicting court, and on habeas review the court basically concluded it would not have granted a mistrial had counsel asked for that ruling. Because Petitioner has not met his burden of establishing either deficient performance or prejudice, the state court's denial of this claim was not an unreasonable application of *Strickland*.

### 7. Counsel's performance during voir dire (Claim 7).

Petitioner next maintains he was denied the right to an impartial jury because his attorney failed to ask specifically whether any member of the venire panel was a member of a law enforcement agency. According to Petitioner, a seated juror, David Grant, was a reserve police officer for both New Braunfels and San Antonio and, therefore, presumed to be biased.[2] The state habeas trial court rejected this allegation, finding:

> 4.  Although [Petitioner] is dissatisfied with his verdict and sentence in hindsight, his claims regarding Grant fail. Grant indicated he would not be influenced by any associations with law enforcement and that he did not view officers as more credible or truthful. [Petitioner] has not shown actual bias; in fact, Grant was not biased and appeared to be a favorable juror for [Petitioner].

> 5.  [Petitioner]'s counsel was even more effective than counsel in *Schatzman v. State*, where an ineffective assistance claim was rejected. *See* 05-96-01276-CR, 1998 WL 510475, at *3 (Tex. App.—Dallas Aug. 20, 1998, no pet.) (not designated for publication) (counsel did not directly ask venire if they had any connections to law enforcement).

> 6.  The evidence of [Petitioner]'s guilt was overwhelming. [Petitioner]'s sentence was relatively light when compared with other lengthy or life sentences delivered for DWI third convictions; this was particularly remarkable given [Petitioner]'s additional priors admitted at sentencing. [Petitioner] has not shown and there is no reasonable probability that the result of either stage of trial would have been different with another juror. . . .

ECF No. 13-21 at 118. The trial court determined counsel's performance was not deficient and Petitioner had not established prejudice from the alleged error. ECF No. 13-21 at 117-18. The Texas Court of Criminal Appeals denied relief on the findings of the trial court. ECF No. 13-20.

The record in this case indicates that Petitioner's trial counsel did ask the venire panel a question designed to reveal bias arising from associations with law enforcement, asking the panel: "Is there anyone here who has a law enforcement officer that's either in their immediate

---

[2]  Petitioner's crime occurred in Garden Ridge, a city incorporated within Comal County, Texas. Officer Pelata, the arresting officer, was employed by the Garden Ridge Police Department. ECF No. 13-6 at 7-8.

family or very close to them . . . that they are so close with that they feel like it might influence them?" ECF No. 13-5 at 132. Mr. Grant did not respond to this question. Defense counsel also asked if there was anyone on the panel who would presume a police officer was telling the truth or give officers more credibility; no one on the panel, including Mr. Grant, responded affirmatively. *Id.* at 134. In addition, Mr. Grant's Juror Questionnaire lists his occupation as "Construction—Owner," and his employer as "self-employed." ECF No. 13-3 at 88. Thus, without Mr. Grant volunteering that he was a reserve police officer in a different jurisdiction, counsel had no basis to assert Mr. Grant's alleged bias.

Because counsel did ask a question related to this type of bias, the state court's determination that counsel's performance was not deficient was not objectively unreasonable. Furthermore, Petitioner has not established that the alleged error was prejudicial with regard to his guilt because there was substantial evidence against Petitioner other than the challenged testimony of Officer Pelata. *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) (noting the weight of the evidence of guilt in finding alleged deficient performance of counsel not prejudicial); *Pondexter v. Quarterman*, 537 F.3d 511, 525 (5th Cir. 2008). With regard to his punishment, Petitioner also has not established the alleged error was prejudicial given the number and nature of Petitioner's prior convictions and the fact that he received a less-than-maximum sentence. Accordingly, the state court's denial of this claim was not an unreasonable application of *Strickland*.

### 8. Counsel's failure to object to perjured testimony (Claim 12).

In his twelfth allegation, Petitioner argues counsel was ineffective for failing to object to the "perjured" testimonies of Officer Pelata and Mr. Porter. According to Petitioner, trial

counsel knew there were discrepancies in the arresting officer's affidavit, namely: (1) the affidavit stated the officer spoke to witnesses before placing Petitioner under arrest and (2) the officer asked Petitioner qualifying questions before performing field sobriety tests. Petitioner contends the affidavit was therefore "perjured" because the officer later testified at trial that these two statements were incorrect. Regarding Mr. Porter, Petitioner alleges Mr. Porter falsely testified that he saw Petitioner behind the wheel of his car prior to his arrest.

To succeed on this claim Petitioner must show counsel failed to raise a meritorious objection. *See Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997) (holding a futile or meritless objection does not support a claim of ineffective assistance of counsel). To establish that a witness for the state committed perjury, the defense must show (1) the witness actually gave false testimony; (2) the falsity was material, i.e., there was a reasonable likelihood the false statement affected the judgment of the jury; and (3) the prosecution used the testimony knowing that it was false. *Reed v. Quarterman*, 504 F.3d 465, 473 (5th Cir. 2007). In this case, Petitioner makes no showing that Mr. Porter's testimony was perjured in any way, and thus fails to demonstrate counsel's performance was deficient for failing to object to his testimony.

Similarly, Petitioner unable to show counsel's performance was deficient with regard to Officer Pelata's testimony because the testimony is more properly characterized as contradictory than false. In fact, the trial court characterized the officer's statements as "inconsistent." ECF No. 13-7 at 57. Regardless, Petitioner is unable to establish any prejudice resulted from counsel's failure to object, as the record demonstrates clearly that counsel objected to the admission of Office Pelata's testimony to the extent it contradicted the statements in his search warrant affidavit. Counsel also repeatedly highlighted for the jury the contradictions in Officer

Pelata's statements, argued for a directed verdict based on Officer Pelata's testimony, and stated in her affidavit that noting the officer's "false statements was part of [her] strategy in hoping that [the jury] would disregard the other evidence and acquit [Petitioner]." ECF No. 13-21 at 114. Counsel noted that, after the trial concluded, the jury told her "it was clear that [the jury] did not agree with the Officer's conduct, however, they felt there was substantial corroboration to show [Petitioner] was operating the motor vehicle and was intoxicated while operating the motor vehicle." *Id.* Counsel's statements were deemed credible by the habeas trial court, which concluded counsel was not ineffective for failing to object to the testimony of Mr. Porter and Officer Pelata as perjured. ECF No. 13-21 at 117-18.

Because Petitioner is unable to establish that counsel's performance was deficient or that he was prejudiced by counsel's alleged error, the state court's denial of this claim was not an unreasonable application of *Strickland*.

### 9. Cumulative error (Claim 11).

In his last IATC claim, Petitioner contends he is entitled to federal habeas relief because of counsel's cumulative errors. He raised this claim in his state habeas action and relief was denied. The state court's denial of relief was not clearly contrary to federal law because the United States Supreme Court has never squarely held that errors that do not individually provide a basis for habeas relief can provide a basis for relief if cumulated. *See Derden v. McNeel*, 978 F.2d 1453, 1456 (5th Cir. 1992) ("That the constitutionality of a state criminal trial can be compromised by a series of events none of which individually violated a defendant's constitutional rights seems a difficult theoretical proposition and is one to which the Supreme Court has not directly spoken."). The Fifth Circuit Court of Appeals has held:

[F]ederal habeas corpus relief may only be granted for cumulative errors in the conduct of a state trial where (1) the individual errors involved matters of *constitutional dimension* rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors "so infected the entire trial that the resulting conviction violates due process."

*Id.* at 1454 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

Because none of the errors alleged by Petitioner constituted a violation of his right to the effective assistance of counsel, the "cumulation" of these errors does not provide a basis for relief. *Coble v. Quarterman*, 496 F.3d 430, 440 (5th Cir. 2007); *Livingston v. Johnson*, 107 F.3d 297, 309 (5th Cir. 1997).

**B.      The Right to an Impartial Jury (Claim 6).**

Petitioner contends he was denied his right to an impartial jury because a seated juror, David Grant, was a reserve police officer for both New Braunfels and San Antonio. According to Petitioner, "Mr. Grant omitted the fact that he himself was a reserve police officer," and "[stayed] silent" when defense counsel asked the venire panel if anyone had an immediate family member or someone close to them employed by a law enforcement agency. Petitioner contends Mr. Grant's purported bias in favor of law enforcement "played [heavily] on the jury" and influenced the jury's verdict and assessment of his sentence.

There are two ways a party may establish that a juror is biased and thus incompetent to serve: implied bias and express bias. *Solis v. Cockrell*, 342 F.3d 392, 395 (5th Cir. 2003). In a "narrow range of cases" a juror's relationship to a party or the case will raise such doubts about his ability to uphold his oath that he will be presumed biased as a matter of law. *Smith v. Phillips*, 455 U.S. 209, 222 (1982) (O'Connor, J., concurring); *Brooks v. Dretke*, 444 F.3d 328, 330 (5th Cir. 2006). Bias is presumed when a juror is "employed by the prosecuting agency, [is]

a close relative of a participant in the trial, [or is] somehow involved in the transaction that is the subject of the trial." *United States v. Bishop*, 264 F.3d 535, 554 (5th Cir. 2001).

Mr. Grant is not presumed biased because he worked as a reserve police officer for a municipality other than the prosecuting agency. *See United States v. McCord*, 695 F.2d 823, 828 (5th Cir. 1983) (finding the implied bias doctrine does not apply merely because the juror holds "an official position as a member of the law enforcement community."); *compare Solis*, 342 F.3d at 396-98 (collecting cases); *United States v. Scott*, 854 F.2d 697 (5th Cir. 1988) (finding bias where juror failed to disclose during voir dire that his brother was a deputy sheriff in the same office that performed some of the investigation in the defendant's case).

Where bias is not presumed as a matter of law, the question of "actual" juror bias is one of historical fact. *Wainwright v. Witt*, 469 U.S. 412, 428 (1985). A juror harbors an actual bias, such that he may be excluded for cause, if his "views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Soria v. Johnson*, 207 F.3d 232, 242 (5th Cir. 2000) (*quoting Witt*, 469 U.S. at 424). On federal habeas corpus review, proof of actual bias requires a showing that the juror in a given case had "such fixed opinions that they could not judge impartially the guilt of the defendant." *Chavez v. Cockrell*, 310 F.3d 805, 811 (5th Cir. 2002). A juror is disqualified, for example, if he *unequivocally* states during voir dire that he cannot be fair and impartial. *Virgil*, 446 F.3d at 613 (emphasis added).

On state habeas review, the trial court found:

4.    Although [Petitioner] is dissatisfied with his verdict and sentence in hindsight, his claims regarding Grant fail. Grant indicated he would not be influenced by any associations with law enforcement and that he did not view officers as more credible or truthful. [Petitioner] has not shown actual bias; in fact, Grant was not biased and appeared to be a favorable juror for [Petitioner].

ECF No. 13-21 at 117. The state habeas court's factual finding that Mr. Grant was not actually biased is entitled to a presumption of correctness unless it is not fairly supported by the record, and may be overcome only by clear and convincing evidence. *Patton v. Yount*, 467 U.S. 1025, 1038-39 (1984); *Miller v. Thaler*, 714 F.3d 897, 903 (5th Cir. 2013).

Here, the habeas trial court's factual finding that Mr. Grant was not actually biased is fairly supported by the record. In fact, Mr. Grant gave several responses which appeared favorable to Petitioner, including (1) he believed a prior DWI should be within ten years in order to make a latter DWI a felony, (2) he did not consider a police officer's testimony more credible, (3) he also would drink on occasion, and (4) he would have considered probation if Petitioner were eligible. ECF No. 13-5 at 70, 73, 134, 135, 137, 184, 186. Moreover, Petitioner presents no clear and convincing evidence to rebut the presumption of correctness afforded this finding. Accordingly, the state court's denial of relief was not clearly contrary to, or an unreasonable application of, clearly established federal law.

## C.    The Admission of Blood Evidence (Claim 8).

Finally, Petitioner contends his right to due process was violated when the trial court "allowed in evidence dealing with the blood samples when no chain of custody was proven or provided for the blood samples." A break in the chain of custody, however, "simply goes to the weight of the evidence, not its admissibility." *Shields v. Dretke*, 122 Fed. App'x 133, 149-50 (5th Cir. 2005) (quoting *United States v. Sparks*, 2 F.3d 574, 582 (5th Cir. 1993)); *see also Lockhart v. McCotter*, 782 F.2d 1275, 1280-81 (5th Cir. 1986). Moreover, violations of state law, such as the admissibility of evidence implicating "chain of custody" questions, cannot support the granting of habeas relief unless they are so egregious as to render the entire trial

fundamentally unfair. *Thomas v. Lynaugh*, 812 F.2d 225, 230-31 (5th Cir. 1987). Petitioner has not provided any evidence that the chain of custody issues were so egregious as to render his trial fundamentally unfair. Thus, Petitioner has not established the state court's rejection of this claim during his state habeas corpus proceedings was contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence. Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

## IV. Certificate of Appealability

The undersigned must now determine whether to issue a certificate of appealability (COA). *See* Rule 11(a) of the Rules Governing § 2254 Proceedings; *Miller–El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)). A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If a district court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El*, 537 U.S. at 336 (citation omitted).

A district court may deny a COA *sua sponte* without requiring further briefing or argument. *See Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000). For the reasons set forth above, the undersigned concludes that jurists of reason would not debate the conclusion that Petitioner was not entitled to federal habeas relief. As such, a COA will not issue.

# V. Conclusion and Order

Petitioner failed to establish that the state court's rejection of the aforementioned claims on the merits during his state habeas corpus proceedings was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented during Petitioner's state trial, appellate, and habeas corpus proceedings. As a result, Petitioner's federal habeas corpus petition does not warrant relief.

Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1.     Federal habeas corpus relief is **DENIED** and Petitioner Mark Gorden McMurphy's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DISMISSED WITH PREJUDICE**;

2.     No Certificate of Appealability shall issue in this case; and

3.     All other remaining motions, if any, are **DENIED**, and this case is now **CLOSED**.

It is so **ORDERED**.

**SIGNED this the 14th day of November, 2018**.

_____
**ELIZABETH S. ("BETSY") CHESTNEY**
**U.S. MAGISTRATE JUDGE**